UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TD BANKNORTH INSURANCE AGENCY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| CRAIG H. MEEKER, SMITH BROTHERS INSURANCE, INC., AND DANIELLE BECHARD, | ) ) ) ) | |
| Defendants. | ) ) | NOVEMBER 2, 2007 |

## COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF

The plaintiff, TD Banknorth Insurance Agency, Inc. ("TDBIA" or the "Company"), complains against the defendants, Craig H. Meeker ("Meeker"), Smith Brothers Insurance, Inc. ("Smith Bros."), and Danielle Bechard  ("Bechard") (collectively "Defendants"), as follows:

### INTRODUCTION

1.      TDBIA seeks to enforce promises made by Meeker and memorialized in a written Non-Solicitation and Confidentiality Agreement between Meeker and TDBIA (the "Agreement"), including a covenant not to solicit TDBIA's customers, a covenant not to misappropriate TDBIA's confidential information and trade secrets, and a covenant not to solicit or recruit TDBIA employees to accept employment with the Company's competitors.

2.      Meeker willfully breached and continues to breach the Agreement and to violate applicable Connecticut law both during and after his employment with TDBIA by soliciting customers of TDBIA, by wrongfully using and misappropriating TDBIA's confidential information and trade secrets, and by soliciting and recruiting employees of the Company.

3.      Meeker committed breaches of the Agreement and violations of applicable Connecticut law for his own benefit and for the benefit of his current employer, Smith Bros., and Smith Bros. has accepted and retained those benefits with full knowledge that they derive from Meeker's misconduct, including his breaches of the Agreement and the violations of applicable Connecticut law.  Meeker and Smith Bros. have wrongfully caused and continue to cause harm to the proprietary interests of TDBIA for which monetary damages are an inadequate remedy.

4.      TDBIA also seeks to enforce promises made by Bechard and memorialized in a written Code of Conduct and Ethics (the "Code of Conduct"), including a covenant that she would safeguard and not disclose all of TDBIA's confidential information and trade secrets.

5.      Bechard and Meeker willfully breached and continue to breach the Code of Conduct and to violate applicable Connecticut law both during and after their employment with TDBIA by wrongfully using and misappropriating TDBIA's confidential information and trade secrets.

6.      Bechard and Meeker committed breaches of the Code of Conduct and violations of applicable Connecticut law, and Meeker breached his Agreement, for their own benefit and for the benefit of their current employer, Smith Bros., and Smith Bros. has accepted and retained those benefits with full knowledge that they derive from Bechard and Meeker's misconduct.  Defendants have wrongfully caused and continue to cause harm to the proprietary interests of TDBIA for which monetary damages are an inadequate remedy.

**PARTIES**

7.      TDBIA is an insurance agency organized under the laws of the State of Maine, with a principal place of business in South Portland, Maine.

8.      Meeker is an individual who, upon information and belief, resides in Farmington, Connecticut.

ME1 6884788v.1

9.      Smith Bros. is an insurance agency organized under the laws of the State of Connecticut, with a principal place of business in Glastonbury, Connecticut.

10.     Bechard is an individual who, upon information and belief, resides in Bristol, Connecticut.

## JURISDICTION AND VENUE

11.     The United States District Court for the District of Connecticut has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship between TDBIA and the Defendants.

12.     This judicial district is the proper venue pursuant to 28 U.S.C. § 1391(a) because it is the district in which the Defendants reside and in which a substantial part of the events giving rise to TDBIA's claims occurred.

## STATEMENT OF FACTS

13.     TDBIA is engaged in the highly competitive business of selling and marketing surety bonds, insurance, and related products and services.  TDBIA sells its products and services through its employee agents and officers.  The sale of these products and services by TDBIA's employees and officers constitutes the primary source of revenue for TDBIA.

14.     Meeker began employment with TDBIA on or about November 28, 2003, as a Vice President, Business Development Producer, in TDBIA's Bonds Division.  As a condition of the offer of employment, Meeker accepted and bound himself to the terms of a written Non-Solicitation and Confidentiality agreement with TDBIA, dated December 1, 2003, which Meeker and TDBIA subsequently restated with minor, non-substantive amendments to form the operative Agreement, dated July 5, 2007.

ME1 6884788v.1

15.     Meeker was employed as an underwriter in the insurance business before undertaking employment with TDBIA.  In that position, he did not have responsibility for marketing surety bonds, soliciting customers, or otherwise producing business through the sale of surety bonds or related products or services.  Consequently, Meeker did not have a "book of business" or existing clientele at the time that he started employment with TDBIA.

16.     As a Vice President and Business Development Producer in the employ of TDBIA, Meeker had the responsibility to develop new customers of surety bonds and related products and services and to retain and to expand business with existing TDBIA customers.  Meeker sold and promoted the sale of surety bonds and related products and services, solicited new customers, serviced existing customer accounts, maintained accurate customer account and budget information, and otherwise sold and promoted the sale of surety bonds and related products and services. TDBIA compensated Meeker for developing business relationships and for otherwise generating good will for and on behalf of TDBIA.

17.     At the time of the termination of Bechard's employment, on or about October 24, 2007, she worked under Meeker's supervision as a Customer Service Agent III in TDBIA's Bond Division. At the time of her termination, her duties included:  (a) performing customer service for assigned large or complex accounts, providing information, answering questions, researching issues, reviewing accounts, coordinating renewals and ensuring customer satisfaction; (b) receiving, researching and answering inquiries and requests regarding accounts, coverages, products, rates, billing, claims, and services offered from both customers and internal personnel; (c) coordinating changes, updates and renewals of customer accounts, gathering and preparing information and communicating and meeting with customers, marketers, carriers and others as needed; (d) communicating with customers and coordinates with necessary internal, carrier and other personnel,

including marketers and producers as necessary, to request information; (e) selling, cross-selling and offering additional insurance products to existing customers; and (f) reviewing accounts to ensure proper coverages, rates, premiums, descriptions and administration to further ensure adequate insurance and conformance to established guidelines, policies and procedures.

18.    To enable Meeker to form business relationships with customers and to otherwise generate good will for and on behalf of TDBIA, the Company provided Meeker with access to its confidential and proprietary information. The confidential and proprietary information, trade secrets, and property of TDBIA to which Meeker had access included, but was not limited to, customer lists and account information, strategic business plans, customer loss information, budget information, promotional plans and strategies, rate and pricing structures, financial information, advertising information and strategies, business policies and practices, business forms, and other confidential and proprietary information. The confidential and proprietary information to which Meeker had access is further defined in paragraph four of the Agreement.

19.    The Agreement contains covenants that prohibit certain conduct by Meeker during and after his employment with TDBIA as reasonably necessary to protect TDBIA's legitimate business interests. Meeker specifically acknowledged and agreed that the restrictive covenants contained in the Agreement are reasonable in scope and duration and are intended solely to protect the Company's assets and interests against unfair competition.

20.    Meeker specifically promised and agreed that: (a) "all insurance, surety and other types of bonds, self-insurance programs, consulting services, niche and association programs, financial services and products, employee benefit programs, and other related insurance and risk management products and services sold, handled, or performed by [Meeker] shall be sold, handled and performed solely for the account of, and on behalf of, the Company [TDBIA]," and "during and

after the term of [Meeker's] employment, the Company shall have and control the exclusive right to renew, sell, and handle such insurance, products, and services"; (b) "the Company is the sole owner of confidential and proprietary information relating to the Company's business with its customers and the Company's relationships and goodwill with its customers"; and (c) "the Company is the sole owner of any goodwill built-up or developed by the Employee through the Employee's relationship with any of the Company's customers." Agreement, p. 3, at ¶¶ 3.A - 3.B.

      21.    Meeker specifically promised and agreed that he would maintain and protect the confidentiality of TDBIA's Confidential and Proprietary Information as follows:

> [Meeker] agrees to maintain and ensure the strictest confidentiality of all Confidential and Proprietary Information at all times during and after his/her employment with the Company, and shall not, directly or indirectly, at any time during or after [his] employment with the Company (except as expressly authorized by the Company in conjunction with [Meeker's] work for the Company or as otherwise required by law), disclose, divulge or reveal the same to any entity or person or retain or use the same for [Meeker's] own or another entity's or person's gain or benefit.

Agreement, p. 3, at ¶ 4.A.

      22.    Meeker and TDBIA agreed that the "Confidential and Proprietary Information" subject to the restrictive covenant includes:

> customer advertising, pricing and billing information, including but not limited to names of customers, customer contacts, policy expiration dates, policy terms, familiarity with customer's risk characteristics, and information concerning the insurance markets for commercial risks including large or unusual commercial risks; customer practices, policies, and preferences; the Company's and [Meeker's] customer and prospect lists, including customer and prospective customer identities, contacts, and information; the Company's billing practices, marketing plans or proposals or strategies, promotional plans or proposals or strategies, financial records and information, business forecasts or plans, contracts and contractual forms; all renewal information and expiration dates for policies and other products; and other such information which relates to the Company's business, which is not available generally to the public and which has been developed or acquired by the Company with considerable effort and expense.

Agreement, pp. 3-4, at ¶ 4.B.

ME1 6884788v.1

23.     Meeker specifically promised and agreed that he would, upon the termination of his employment with TDBIA, return to TDBIA all of its Confidential and Proprietary Information as follows:

> All property, materials, files, records and information relating in any way to the business of the Company, including, but not limited to, Confidential and Proprietary Information, which are disclosed to or acquired by or generated by [Meeker], or which [Meeker] had access to or care, custody or control of, during the course of [his] employment with the Company, shall be and remain the exclusive property of the Company.  Upon the termination of [Meeker's] employment with the Company, for whatever reason, or at such earlier time as requested by the Company, all such property, materials, files, records, and information (including all copies thereof) shall be returned and surrendered (or caused to be returned and surrendered) to the Company forthwith, and shall not be removed or copied in whole or in part by [Meeker], and the Company shall (in addition to all other remedies and damages available) have the right of specific performance and injunctive relief to obtain such documents, information and materials.

Agreement, p. 4, at ¶ 5.

24.     Meeker specifically promised and agreed that he would not, during the course of his employment with TDBIA, plan, organize, or engage in any business activity that would compete with TDBIA as follows:

> [Meeker] agrees that while employed by the Company, [he] will not, in any way, directly or indirectly, individually or on behalf of or in conjunction with any entity or person, plan, organize, participate or engage in any business activity that would compete with the Company or provide, offer or market services, or products similar to those services or products provided, offered or marketed by the Company.  [Meeker] acknowledges and agrees that violation of this provision is a material breach of this Agreement and of [Meeker's] duty of loyalty to the Company.

Agreement, p. 4, at ¶ 6.

25.     Meeker specifically acknowledged, promised, and agreed that TDBIA would provide him with access to, and substantial close contact with, TDBIA's customers and accounts for the purpose of generating goodwill for and on behalf of TDBIA as follows:

> The parties agree that, during the course of [Meeker's] employment with the Company, (1) the Company has provided and/or will provide [Meeker] with access to, and substantial and close contact with, the Company's existing, prospective and/or potential clients, customers, and

7

accounts (including clients, customers, and accounts with whom the Company has developed a close relationship and significant goodwill); (2) [Meeker] has and/or will acquire Confidential and Proprietary Information regarding the relationships between the Company and its clients, customers and accounts; and (3) [Meeker], on behalf of and for the benefit of the Company and at the Company's substantial expense, has developed and maintained, and/or will develop and maintain, close and unique relationships and significant goodwill with the Company's clients, customers, and accounts, including clients, customers, and accounts with whom or with which [Meeker] had a relationship prior to his/her employment with the Company.

Agreement, p. 5, at ¶ 7.

26.     Meeker specifically promised and agreed that he would not, during the course of his employment with TDBIA, solicit the business of, or attempt to divert or take away, any of TDBIA's customers or accounts as follows:

> During the course of [Meeker's] employment with the Company, [Meeker] shall not, directly or indirectly, or through the use of a third party or entity, whether for [his] own benefit or account or for the benefit or account of any person or entity other than the Company, solicit, call upon, divert, attempt to divert, take away, attempt to take away, induce, or negotiate with any person, firm, corporation, or other entity who or which is or was doing business with the Company.

Agreement, p. 5, at ¶ 7.C.

27.     Meeker specifically promised and agreed that he would not, for a period of three years after the termination of his employment with TDBIA, interfere or attempt to interfere with TDBIA's relationship with any of its customers or accounts as follows:

> For a period of three years after termination of [Meeker's] employment with the Company for whatever reason, [Meeker] shall not, directly or indirectly, or through the use of any other party or entity, whether on behalf of or in conjunction with any entity or person, and whether for his/her own benefit or account or for the benefit or account of any person or entity other than the Company, interfere or attempt to interfere with the relationship of the Company with any existing client, customer, or account or any prospective client, customer, or account.

Agreement, p. 5, at ¶ 7.D.

28.     Meeker specifically promised and agreed that he would not, for a period of three years after the termination of his employment with TDBIA, solicit, contact, or call, any of TDBIA's

8

customers or accounts for the purpose of selling or providing insurance-related products or services, as follows:

> For a period of three years after termination of [Meeker's] employment with the Company for whatever reason, [Meeker] shall not, directly or indirectly, or through the use of any other party or entity, whether on behalf of or in conjunction with any entity or person, and whether for his/her own benefit or account or for the benefit or account of any person or entity other than the Company, solicit, contact, or call, or attempt to solicit, contact, or call, any existing client, customer, or account or any prospective client, customer, or account for the purpose of selling or providing any insurance-related services or products.

Agreement, p. 6, at ¶ 7.E.

     29.    Meeker specifically acknowledged, promised, and agreed that (a) the provisions of paragraph 7 of the Agreement would not diminish his ability to earn a livelihood or create an unfair or undue hardship, and (b) TDBIA relied upon his agreement to these provisions in continuing to employ Meeker and in providing him with access to its Confidential and Proprietary Information as follows:

> Meeker acknowledges that [he] has carefully read this paragraph 7, that [he] understands the provisions contained herein, and that the specific enforcement of the provisions contained herein will not diminish [his] ability to earn a livelihood or create or impose upon [him] any unfair or undue hardship. [Meeker] acknowledges that [he] fully understands the limitations placed upon [him] by this paragraph 7, and [Meeker] acknowledges that [he] willingly accepts these limitations in consideration of [his] compensation by the Company and other good and valuable consideration, including the consideration set forth in this Agreement. [Meeker] further acknowledges and agrees that the Company, in commencing its employment relationship with [Meeker] and in providing [him] with access to Proprietary and Confidential Information, has relied upon [his] representation and agreement that [he] will not interfere with and will not solicit, call, or contact existing clients, customers, or accounts or prospective clients, customers, and accounts in violation of this paragraph 7.

Agreement, p. 6, at ¶ 7.F.

     30.    Meeker specifically acknowledged, promised, and agreed that he would not, during the course of his employment with TDBIA and for a period of three years after the termination of his employment, attempt to solicit or to induce TDBIA's employees to leave their employment to work for its competitors as follows:

ME1 6884788v.1

During the course of [Meeker's] employment with the Company, and for a period of three years thereafter, [Meeker] promises and agrees to refrain from directly or indirectly soliciting, inducing, or recruiting, or attempting to solicit, induce or recruit, or causing others to solicit, induce or recruit, any employee of the Company to apply for or accept employment with any other person or entity in direct or indirect competition with the Company.

Agreement, p. 6, at ¶ 8.

31.    Meeker specifically promised and agreed that the restrictive covenants contained in his Agreement with TDBIA were reasonable and that any breach of the restrictive covenants would result in irreparable harm to TDBIA entitling TDBIA to injunctive relief as follows:

[Meeker] agrees that the restrictions imposed by paragraphs 3 through 9 of this Agreement are reasonable with respect to the Company's protected and protectible business interests, the Company's Confidential and Proprietary Information, and the time period covered, and that [Meeker's] compliance with such covenants and restrictions is necessary to protect the business and goodwill and other legitimate proprietary interests of the Company, and that the level of compensation set forth in this Agreement has been calculated to include amounts sufficient to constitute adequate consideration both for the employment services to be rendered to the Company by [Meeker] and for [Meeker's] compliance with the foregoing covenants and restrictions. [Meeker] further agrees that the damages that will be suffered by the Company as a result of any breach or violation of the restrictions imposed by paragraphs 3 through 9 of this Agreement would be irreparable and difficult, if not impossible, to ascertain. Accordingly, the parties agree that, in the event of a breach, attempted breach, or prospective breach by [Meeker] of paragraphs 3 through 9 of this Agreement, the Company shall be entitled to obtain immediate temporary, preliminary and permanent injunctive relief by any court of competent jurisdiction, without bond, to enforce the terms of this Agreement and to enjoin [Meeker] from continuing or commencing any activity which would violate any of the covenants and restrictions imposed by paragraphs 3 through 9 of this Agreement. The remedies expressed in this paragraph 10 are not exclusive, and are meant to be in addition to any and all other rights or remedies available under applicable law, including monetary damages. In addition, [Meeker] agrees to pay all reasonable attorneys' fees and costs incurred by the Company in enforcing, and establishing a violation or threatened violation of, any of the restrictions, covenants, promises, and agreements contained in this Agreement.

Agreement, p. 7, at ¶ 10.

32.    During the period of his employment with TDBIA, Meeker made plans with Smith Bros. (a) to undertake employment with Smith Bros. for the purpose of performing the same or substantially the same responsibilities as he performed while employed by TDBIA as Vice

ME1 6884788v.1

President, Business Development Producer; (b) to use Confidential and Proprietary Information of TDBIA to solicit the clients of TDBIA so that those clients would discontinue their business relationship with TDBIA and commence a business relationship Smith Bros. and Meeker; and (c) to solicit and to recruit other TDBIA employees over whom Meeker had supervisory authority to work for Smith Bros.

33. On October 22, 2007, Meeker submitted a written notice of resignation to TDBIA, voluntarily providing a two-week notice of terminating his employment relationship with TDBIA. Upon receipt of Meeker's resignation letter, TDBIA terminated Meeker's employment effective as of October 22, 2007.

34. Beginning while Meeker was still employed by TDBIA, and continuing beyond the date of his resignation, Meeker acted on his own behalf and as agent for Smith Bros. to solicit customers of TDBIA, to misappropriate TDBIA's Confidential and Proprietary Information and trade secrets, and to recruit other employees away from TDBIA and to Smith Bros., all for the purpose of wrongfully benefiting himself and Smith Bros. to the detriment of TDBIA. These wrongful acts include, but are not limited to, the following misconduct:

    A.    A short while before his resignation, and in violation of TDBIA's policies and procedures, Meeker sent at least three emails with an attached document from his work computer at TDBIA to the home computer of Bechard and subsequently recruited her away from TDBIA and to Smith Bros. The attachment sent by Meeker to Bechard contains the "book of business" and customer prospect information for which Meeker was given responsibility while employed by TDBIA, *i.e.*, a report of the TDBIA clients whose accounts Meeker worked as Vice President, Business Development Producer. The attachment sent by Meeker to Bechard contains highly confidential and proprietary information of TDBIA including, but not limited to, customer and prospect names and contact information and types of accounts maintained with TDBIA  In short, Meeker misappropriated for his benefit and for the benefit of Smith Bros. TDBIA's Confidential and Proprietary Information regarding these customers and prospects necessary to sell surety bonds and related products and services to them. The information taken by Meeker regarding these customers and prospects represents a substantial amount of work, input, research, and

proprietary information that Defendants otherwise would not have access to and that Defendants could use and did use to solicit business for their own benefit.

B.  On October 22, 2007, the *same day* that Meeker submitted his resignation, many of TDBIA's customers submitted "Broker of Record" letters by which they directed surety companies to recognize Smith Bros. – and not TDBIA – as their exclusive broker. These letters are the same in form and content even though they appear under differing letterheads of various customers. Based upon the timing, form, and content of the Broker of Record letters, TDBIA asserts that Meeker planned and worked with TDBIA's customers' to prepare the Broker of Record letters while he was still employed by TDBIA and/or that Meeker used and misappropriated TDBIA's Confidential and Proprietary Information to prepare the letters both during and after his employment with TDBIA. TDBIA received additional Broker of Record letters from other customers later in the same week; and, as of the date of this complaint, Meeker has solicited and induced more than 30 separate customers to leave TDBIA and move their business to Smith Bros.

35.  On October 24, 2007, TDBIA received a voicemail message from one of its customers indicating that Meeker had contacted the customer to inform him that he was no longer with TDBIA. Upon information and belief, in so doing, Meeker encouraged and solicited the customer to transfer his business from TDBIA to Meeker and Smith Bros.

36.  While Meeker was still employed by TDBIA and after he left his employment with TDBIA to work for Smith Bros., Meeker breached his Agreement with the Company by soliciting, inducing, and recruiting two TDBIA employees—Bechard and Erin Bennett—to leave their employment with the Company and begin working with Meeker for Smith Bros.

37.  Despite the clear and reasonable covenants in the Agreement, Meeker has violated and continues to violate the Agreement and applicable Connecticut law by misappropriating TDBIA's Confidential and Proprietary Information, by soliciting, selling to, and taking away TDBIA's customers and accounts, and by soliciting, inducing, and recruiting TDBIA's employees to leave their employment with the Company and to begin working for Smith Bros.

ME1 6884788v.1

38.     TDBIA has performed all of its obligations under the Agreement and has not waived

its right to enforce any of the provisions of the Agreement.  All conditions precedent to

commencement of these proceedings have been satisfied or have otherwise occurred.

39.     TDBIA is a subsidiary of TD Banknorth Inc.  As a condition of her employment,

Bechard agreed to be bound by the TD Banknorth Inc. U.S. Code of Conduct and Ethics (the "Code

of Conduct"), under which Bechard specifically promised and agreed that she would safeguard and

not disclose all TDBIA Confidential or Proprietary information, including, but not limited to, as

follows:

> All information concerning the Company's customers, prospective customers, parent,
> vendors or agents, or their accounts or transactions with the Company, including but not
> limited to their financial, business and credit information, and all non-public information
> regarding the Company's business, finances, systems, procedures and intellectual property,
> is considered "Confidential or Proprietary Information." Persons must safeguard all such
> Confidential or Proprietary Information in accordance with applicable law, the Company's
> Privacy and Safeguarding Customer Information Policies, as amended from time to time,
> and any applicable confidentiality/non-disclosure agreement or arrangement that Persons
> may have with the Company. Persons must use and disclose such Confidential or
> Proprietary Information solely as necessary for purposes of conducting the Company's
> business, and not use, disclose, sell, give or exchange any such Confidential or Proprietary
> Information to benefit themselves or any party other than the Company.

Code of Conduct, § 4(A).

40.     The success of TDBIA's business depends upon maintaining the confidentiality of its

Confidential and Proprietary Information and preserving its proprietary interest in customer

goodwill, customer identities, customer account information, financial information, marketing

strategies, and other confidential business information, and upon retaining its employees in whom it

has invested substantial time and resources in training and developing customer relationships and

goodwill.

41.     Defendants have derived – and, unless enjoined, will continue to derive – an unfair

economic benefit from their use and misappropriation of TDBIA's Confidential and Proprietary

Information and other proprietary interests and Meeker's recruitment of TDBIA employees in violation of the Agreement and applicable Connecticut law. Defendants will have the advantage of free access to TDBIA's Confidential and Proprietary Information without the need to expend the time, resources, and efforts to develop and to assemble the material themselves. In addition, Defendants will be able to rely on the goodwill and customer relations that TDBIA paid Meeker to foster and which he agreed not to misappropriate for his own benefit. Moreover, as a result of Meeker's recruitment of TDBIA's employees, Defendants will have the benefit of the Company's investment of time and money in training these individuals in its business and in developing customer relationships and goodwill.

42.     Defendants have refused and continue to refuse to comply with the terms of Meeker's Agreement and with applicable Connecticut law. In an effort to retrieve its Confidential and Proprietary Information and to mitigate the detrimental consequences of Defendants' wrongful conduct, TDBIA wrote to Defendants demanding (a) that Meeker, Bechard, and Smith Bros. immediately return and maintain the confidentiality of all documents in their possession, custody, or control that contain or reflect TDBIA's Confidential and Proprietary Information; (b) that Meeker and Smith Bros. immediately cease soliciting TDBIA's employees to leave their employment with the Company to join Smith Bros.; and (c) that Smith Bros. take notice of Meeker's continuing obligations to the Company and take steps to avoid using and misappropriating the Company's Confidential and Proprietary Interest and customer goodwill. Despite TDBIA's efforts, Meeker has refused and failed to comply with his Agreement, Bechard has refused and failed to comply with the Code of Conduct, and Defendants have refused and failed to comply with applicable Connecticut law.

ME1 6884788v.1

43.     Meeker's continuing breaches of the Agreement, Bechard's continuing breaches of the Code of Conduct, and Defendants' violations of applicable Connecticut law, have caused and present a real and substantial threat of immediate and irreparable injury to TDBIA for which there is no adequate remedy at law, in that:

A.     If Defendants are not prevented from soliciting and contacting TDBIA's customers and accounts, TDBIA will have no way to monitor what accounts have been wrongfully solicited or contacted by Defendants.

B.     If Defendants are not prevented from using and misappropriating TDBIA's Confidential and Proprietary Information, TDBIA will be in continual jeopardy that its Confidential and Proprietary Information will be used to its detriment and to the unlawful economic benefit of Defendants.

C.     If Defendants are not prevented from soliciting and contacting TDBIA's customers and accounts, and from using and misappropriating TDBIA's Confidential and Proprietary Information, TDBIA will suffer immediate and irreparable injury in the form of lost goodwill and other unquantifiable losses and damages.

D.     If Defendants are not prevented from soliciting and contacting TDBIA's customers and accounts, and from using and misappropriating TDBIA's Confidential and Proprietary Information, TDBIA will be unable to estimate or calculate the amount of lost profit, lost goodwill, lost opportunity and other damages attributable to the actions of Defendants.

E.     If Meeker is not prevented from recruiting and soliciting TDBIA's employees to leave their employment to work for Smith Brothers Insurance, TDBIA will be in continual jeopardy that its Confidential and Proprietary Information will be used to its detriment and to the unlawful economic benefit of Defendants and will suffer immediate and irreparable damages and injury in the form of lost good will and other unknown losses and damages.

## CLAIMS FOR RELIEF

### COUNT I:  Beach of Agreement
### – Meeker–

44.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

ME1 6884788v.1

45.     Meeker's conduct as set forth above, including, but not limited to, soliciting and selling insurance products and services to TDBIA's customers and accounts, interfering with TDBIA's relationship with its customers and accounts, engaging in activities to compete with TDBIA while still employed by TDBIA, using and misappropriating TDBIA's Confidential and Proprietary Information for his own economic benefit and for the benefit of his new employer, Smith Bros., and recruiting and soliciting TDBIA's employees to leave their employment with TDBIA to work with him at Smith Bros., constitute separate breaches of Meeker's Agreement.

46.     TDBIA has suffered and continues to suffer damages as a direct and proximate result of Meeker's breaches of contract.

47.     TDBIA has suffered immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of Meeker's breaches of contract.

### COUNT II:  Violations of the Connecticut Uniform Trade Secrets Act – Meeker, Bechard, and Smith Bros. –

48.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

49.     TDBIA's Confidential and Proprietary Information constitutes trade secrets as defined by the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-51(d) ("CUTSA").

50.     Meeker and Bechard willfully violated and continue to violate the provisions of the CUTSA by misappropriating and utilizing confidential and proprietary trade secrets and information belonging to TDBIA for the benefit of themselves and Smith Bros., including, but not limited to, TDBIA's Confidential and Proprietary Information and such other information which relates to TDBIA's business, which is not available generally to the public, and which has been developed or acquired by the TDBIA with considerable effort and expense.

16

51.     Meeker and Bechard presently are employed by Smith Bros., a direct competitor of TDBIA, and Meeker has solicited and continues to solicit TDBIA's customers and accounts by using and misappropriating TDBIA's confidential and proprietary trade secrets and information in violation of his obligations under the CUTSA.

52.     Through the actions of Meeker and Bechard as set forth above, Smith Bros. has engaged in misappropriation of trade secrets and willful violation of the CUTSA.

53.     TDBIA has suffered and continues to suffer damages as a direct and proximate result of Defendants' violations of the CUTSA .

54.     TDBIA has suffered immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of Defendants' violations of the CUTSA.

**COUNT III:  Conversion**
**– Meeker, Bechard, and Smith Bros. –**

55.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

56.     Meeker and Bechard wrongfully converted and misappropriated for their own use TDBIA's property, including TDBIA's Confidential and Proprietary Information.

57.     Through Meeker and Bechard's conduct as set forth above, Smith Bros. has wrongfully converted and misappropriated for its own use TDBIA's property, including TDBIA's Confidential and Proprietary Information.

58.     TDBIA has suffered and continues to suffer damages that are a direct and proximate result of Defendants' conversion.

59.     TDBIA has suffered and continues to suffer immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of Defendants' conversion.

17

### COUNT IV:  Breach of Common Law and Statutory Fiduciary Duties
### – Meeker –

60.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

61.     As an officer and employee of TDBIA, Meeker owed common law fiduciary duties to TDBIA, including the duties of loyalty, care, and candor, and the duty to not usurp corporate opportunities, which required him to exercise his powers and to discharge his duties in good faith and in a manner designed to promote the best interests of TDBIA.

62.     As an officer of TDBIA, Meeker was obligated under Conn. Gen. Stat. § 33-765(a) to discharge his duties in good faith and in a manner designed to promote the best interests of TDBIA and to not usurp the corporate opportunities of TDBIA.

63.     By Meeker's conduct as set forth above – including, but not limited to, using and misappropriating TDBIA's Confidential and Proprietary Information, actively competing with TDBIA and soliciting TDBIA's customers and accounts while still employed by TDBIA, and failing to provide full and accurate disclosure to TDBIA regarding his activities – Meeker breached his common law and statutory duties owed to TDBIA.

64.     TDBIA has suffered and continues to suffer damages as a direct and proximate result of Meeker's breach of his common law and statutory duties.

65.     TDBIA has suffered and continues to suffer immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of Meeker's breach of his common law and statutory duties.

18

ME1 6884788v.1

## COUNT VIII:  Violations of Conn. Gen. Stat. § 53a-251
### – Meeker –

82.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

83.     TDBIA maintains and operates one or more computer systems, as that term is defined under Conn. Gen. Stat. § 53a-250(7) and § 53a-251(b), within the State of Connecticut. TDBIA's Confidential and Proprietary Information and other data (including, but not limited to, private personal data of TDBIA's clients, customers and accounts) is stored on, and may be accessed from, one or more of these computers systems, access to which is controlled via secret, individualized passwords.

84.     During his employment with TDBIA, Meeker was issued a password to obtain access to TDBIA's computer systems to be used for the sole and limited purpose of performing the duties TDBIA assigned to him in furtherance of TDBIA's business interests.

85.     Meeker knowingly accessed TDBIA's computer systems, or caused TDBIA's computer systems to be accessed, without authorization for the purpose of misappropriating, converting, and otherwise improperly removing and obtaining TDBIA's Confidential and Proprietary Information stored in electronic form, in violation of Conn. Gen. Stat. § 53a-251(b)(1).

86.     By accessing TDBIA's computer systems without authorization, or causing TDBIA's computer systems to be accessed, Meeker intentionally made or caused to be made an unauthorized display, use, disclosure, or copy of TDBIA's Confidential and Proprietary Information and other data, residing in, communicated by or produced by TDBIA's computer systems, in violation of Conn. Gen. Stat. § 53a-251(e)(1).

87.     By accessing TDBIA's computer systems without authorization, or causing TDBIA's computer systems to be accessed, Meeker intentionally and/or recklessly intercepted

21

75.     TDBIA has suffered and continues to suffer immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of Defendants' tortious interference.

### COUNT VII:  Violations of Connecticut Unfair Trade Practices Act
### – Meeker, Bechard, and Smith Bros. –

76.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

77.     The conduct of Smith Bros., and of Meeker and Bechard, following the termination of their employment with TDBIA as set forth above, (a) offends public policy as established by statute and the common law; (b) is unethical, oppressive, and unscrupulous; and (c) causes substantial injury to consumers and competitors.

78.     The conduct of Smith Bros., and of Meeker and Bechard, following the termination of their employment with TDBIA as set forth above, constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b(a) ("CUTPA").

79.     TDBIA has suffered and continues to suffer damages as a direct and proximate result of the unfair trade practices committed by Defendants.

80.     TDBIA has suffered and continues to suffer immediate and irreparable harm for which there is no adequate remedy at law as a further direct and proximate result of the unfair trade practices committed by Defendants.

81.     In accordance with the mandates of the CUTPA, TDBIA will advise the Attorney General for the State of Connecticut and the Commissioner of Consumer Protection for the State of Connecticut of its claim against Defendants by mailing a copy of this complaint to each respective office.

ME1 6884788v.1

## COUNT V: Unjust Enrichment
### – Meeker, Bechard, and Smith Bros. –

66.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

67.     Defendants have been unjustly enriched as a result of their wrongful conduct as set forth above.

68.     TDBIA is entitled to restitution from Defendants in the amount by which they have benefited by their wrongful conduct.

## COUNT VI: Tortious Interference with Advantageous Business Relationships
### – Meeker, Bechard, and Smith Bros. –

69.     TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

70.     TDBIA had contractual, business, beneficial, and/or advantageous economic relationships with the customers whose Confidential and Proprietary Information Defendants misappropriated, whose accounts Defendants solicited and with the employees whom Meeker recruited to leave their employment with TDBIA to work for Smith Bros.

71.     Defendants knew or should have known of these relationships.

72.     Defendants intended to interfere and did intentionally interfere with these relationships.

73.     Defendants interfered with TDBIA's customer relationships maliciously and with improper means and motive in that they acted without any justification for doing so and contrary to statutory law, the terms of Meeker's Agreement with TDBIA and the Code of Conduct.

74.     TDBIA has suffered and continues to suffer damages as a direct and proximate result of Defendants' tortious interference.

TDBIA's Confidential and Proprietary Information and other data residing within TDBIA's computer systems, in violation of Conn. Gen. Stat. § 53a-251(e)(2).

88.    Meeker violated Conn. Gen. Stat. § 53a-251(e)(3) by knowingly receiving or retaining data he obtained in violation of Conn. Gen. Stat. § 53a-251(e)(1) or (2).

89.    Meeker violated Conn. Gen. Stat. § 53a-251(e)(4) by using data he knew he had obtained in violation of Conn. Gen. Stat. § 53a-251(e)(1) or (2).

90.    The actions of Meeker in violating Conn. Gen. Stat. § 53a-251 were willful and malicious.

91.    TDBIA has suffered and continues to suffer damages, and Defendants have been unjustly enriched, as a direct and proximate result of the violations of Conn. Gen. Stat. § 53a-251 committed by Meeker.

### Count IX: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 – Meeker –

92.    TDBIA repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

93.    TDBIA maintains one or more computers and/or computer systems that are "protected computers" under 18 U.S.C. § 1030(e)(2)(B), because they are part of TDBIA's interstate computer network and business operations and they are used in interstate commerce and communication.  TDBIA's Confidential and Proprietary Information is stored on, and can be accessed from, one or more of these protected computers, access to which is controlled via secret, individualized pass codes and passwords.

94.    During his employment with TDBIA, Meeker was issued passwords to obtain access to TDBIA's protected computers to be used for the sole and limited purpose of performing the duties TDBIA assigned to him in furtherance of TDBIA's business interests.

ME1 6884788v.1

95.    Meeker intentionally accessed TDBIA's protected computers without authorization, and/or exceeded his authorized access to TDBIA's protected computers, by using the passwords issued to him to misappropriate, convert and otherwise improperly remove and obtain, TDBIA's Confidential and Proprietary Information stored in electronic form on the protected computers, including, but not limited to, information contained in a financial record of a financial institution, interstate or foreign communications, and other information subject to 18 U.S.C. §§ 1030(a)(2)(A) and 1030(a)(2)(C).

96.    Meeker knowingly and with the "intent to defraud" TDBIA, as that phrase is defined by 18 U.S.C. § 1030(a)(4), accessed TDBIA's protected computers without authorization, and/or exceeding his authorized access to TDBIA's protected computers, to further the intended fraud and obtained things of value that, in the aggregate, exceeded $5,000.00 in a one-year period.

97.    Meeker, while still employed with TDBIA, knowingly and intentionally, downloaded, copied, and otherwise obtained substantial amounts of TDBIA's Confidential Information from TDBIA's protected computers with the intent, and for the purpose, of using such information for their personal benefit and for the benefit of Smith Bros.

98.    By exceeding, and/or attempting to exceed, their authorized access to TDBIA's protected computers, Meeker has caused damage and/or loss to TDBIA of at least, in the aggregate, $5,000.00 during a one-year period.

99.    As a direct and proximate result of Meeker's wrongful conduct, TDBIA has suffered and continues to suffer damage and/or loss.

### PRAYER FOR RELIEF

TDBIA respectfully requests relief from the Court as follows:

1.    Issuance of injunctive relief:

ME1 6884788v.1

(a)   temporarily, preliminarily, and permanently compelling Defendants to immediately turn over to TDBIA, any and all information or materials in their possession relating to TDBIA and its clients, including, but not limited to, TDBIA's Confidential and Proprietary Information (as the term is defined in Defendant Meeker's Non-Solicitation and Confidentiality Agreement);

(b)   temporarily, preliminarily, and permanently enjoining Defendants from destroying, altering, hiding or transmitting to anyone other than TDBIA, any of the materials, information or other evidence in their possession, including, but not limited to, materials or information relating to TDBIA and its clients, customers, accounts, and prospects, including TDBIA's Confidential and Proprietary Information;

(c)   temporarily, preliminarily, and permanently enjoining Defendants from using TDBIA's Confidential and Proprietary Information to contact, call upon, or solicit, or attempt to contact, call upon, or solicit, any of TDBIA's clients, customers, accounts, and prospects in violation of applicable law;

(d)   temporarily, preliminarily, and permanently enjoining Defendant Meeker from contacting, calling upon, or soliciting, or attempting to contact, call upon or solicit, any of TDBIA's clients, customers and accounts in violation of Defendant Meeker's contractual obligations and applicable law;

(d)   temporarily, preliminarily, and permanently enjoining Defendants from misappropriating, using and/or divulging TDBIA's Confidential and Proprietary Information;

(e)   temporarily, preliminarily, and permanently enjoining Defendant Meeker from interfering with TDBIA's relationships with its clients, customers and accounts in violation of Defendant Meeker's contractual obligations;

(f)   temporarily, preliminarily, and permanently compelling Defendants to provide a full accounting of any and all contacts each or any of them have had with TDBIA's clients, customers, accounts, and/or prospects following the termination of Defendant Meeker's and Defendant Bechard's employment relationships with TDBIA;

(g)   temporarily, preliminarily, and permanently compelling Meeker to immediately cease and desist violating the Non-Solicitation and Confidentiality Agreement he signed; and

(h)   temporarily, preliminarily, and permanently compelling Defendant Meeker and Defendant Bechard to provide a full accounting of any and all contacts each or any of them have had with TDBIA's clients, customers, accounts and/or prospects before the termination of their employment relationships with TDBIA, relating in any way to the solicitation of such clients, customers, accounts, and/or prospects and/or their

ME1 6884788v.1

plans to terminate their employment relationships with TDBIA and commence working for Defendant Smith Brothers Insurance, Inc.

2.      All available damages, including compensatory, punitive, and statutory damages, including, but not limited to, exemplary damages under the Connecticut Uniform Trade Secrets Act, to the extent applicable;

3.      An equitable accounting of all solicitations and sales made by Defendants to TDBIA's customers and accounts;

4.      Restitution;

5.      All costs of suit, including reasonable attorney's fees; and

6.      Such other and further relief as the Court deems just and appropriate.


_Robert Gallo II_

Robert J. Gallo (CT 19982)
McCARTER & ENGLISH, LLP
CityPlace I
185 Asylum Street
Hartford, CT  06103
860-275-6700

Eric J. Uhl
Louis B. Butterfield
MOSS SHAPIRO
400 Congress, P.O. Box 7250
Portland, ME 04112-7250
207-774-6001

Attorneys for Plaintiff
TD Banknorth Insurance Agency, Inc.

MEI 6884788v.1